UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
PAVEL VYSOVSKY, MILAN PETRILAK,   :
JAROSLAV KROSHNYI, STANISLAV      :
TELEKY, PETER REDAJ, RADOMIR      :
MALER, JANA BULIKOVA, STANISLAV   :
BULIK, ROBERT ONDUSKO, KEITH      :
MCFARLAND, ANDRZEJ SZYCOWSKI,     :
JACOB IMAS, and STEFAN HOLESA,    :
                                  :
              Plaintiffs,          :
                                  :
    -against-                      :    01 Civ. 2531 (LMM)
                                  :    <u>MEMORANDUM AND</u>
                                  :    <u>ORDER</u>
PETER GLASSMAN "aka" PETER        :
GLAZMAN; U.S. TRANSPORTATION      :
SERVICES, INC.; U.S. PACK         :
COURIER SERVICES,INC.; U.S.       :
PACK EXPRESS, LTD.; and U.S.      :
PACK NETWORK CORP.,               :
                                  :
              Defendants.          :
                                  :
----------------------------------X

McKENNA, D.J.

Plaintiffs are a group of thirteen individuals who have worked for various periods of time as drivers and deliverers for U.S. Pack Network Corp. ("Network") and U.S. Pack Courier Services, Inc. ("Courier").  (Defendants' Statement Pursuant to Local rule 56.1 ("Defs.' Rule 56.1 Stmt") ¶ 5.)  Defendants Network and Courier are corporations that during all relevant times have jointly operated in the business of picking up and delivering

packages.  (Defs.' Rule 56.1 Stmt ¶¶ 4, 6.) (Network and
Courier will hereinafter be referred to jointly and
severally as "U.S. Pack.")  Defendants U.S. Transportation
Services, Inc. and U.S. Pack Express, Ltd. have not been in
existence as active businesses at any relevant period of
time.  (Defs.' Rule 56.1 Stmt ¶ 8.)  Defendant Peter
Glazman is the president of Network and Courier, as well as
the sole officer, director, and shareholder of both
corporations. (Defs.' Rule 56.1 Stmt ¶ 3; Statement
Pursuant to Local Rule 56.1 in Opposition to Defendant's
Motion for Summary Judgment ("Pls.' Rule 56.1 Stmt.") ¶ 4.)

Plaintiffs bring the present action to recover damages
from Defendants, alleging fourteen causes of action in
their complaint.  Defendants here move for summary judgment
pursuant to Rule 56 of the Federal Rules of Civil Procedure
and for permission to amend their answer.

## I.  BACKGROUND

### a. Factual Background

Plaintiffs in this action seek recovery on various
claims stemming from alleged oral contracts with Defendants
for higher pay; claims for unpaid overtime wages under the
Fair Labor Standards Act; claims under the Federal
Insurance Contributions Act; claims for numerous alleged
violations of the Franchise Sales Act; and claims for

unpaid overtime wages and unlawful deductions under the New York Labor Law.

U.S. Pack has operated at all relevant times as a package delivery business, headquartered in New York, and operating throughout the New York metropolitan area as well as parts of New Jersey and Delaware.  As noted above, Defendant Peter Glazman is the president of Network and Courier (the companies comprising "U.S. Pack"), and is a director and shareholder of each.  The depositions of Milan Cuba, a U.S. Pack supervisor, as well as those of Plaintiffs and Defendant Glazman indicate that Glazman had considerable day-to-day control over the employment and operational decisions at U.S. Pack.

According to the Offering Prospectus, the document containing the terms of the U.S. Pack franchise agreement, U.S. Pack was incorporated in New York on October 27, 1988. At that time, the company entered into oral arrangements with certain individuals, "pursuant to which such Initial Subscribers acquired the right to participate in U.S. Pack's radio dispatch system on substantially the terms set forth in the Operating Prospectus."  (Defs.' Rule 56.1 Stmt Exhibit 1 at 00015.)  Pursuant to the oral arrangements, U.S. Pack withheld money from the Initial Subscribers' paychecks in payment of a franchise fee.  On July 3, 1995,

U.S. Pack sent a letter to each Initial Subscriber offering them the right either to rescind their arrangement with U.S. Pack and be paid an amount equal to the franchise fees paid minus income earned through work with U.S. Pack or to acquire a new franchise with U.S. Pack pursuant to the terms of the Offering Prospectus.  Id.

In July of 1996, U.S. Pack filed the Offering Prospectus with the New York State Law Department.  (Defs.' Rule 56.1 Stmt. Exhibit 1.)  U.S. Pack withdrew its franchise registration sometime in 1997, 1998, or 1999, a decision that Defendant Glazman does not explain beyond stating that it was made on advice of counsel.  (Pls.' Rule 56.1 Stmt. ¶ 57.)  Plaintiffs allege that following the withdrawal of U.S. Pack's franchise registration, U.S. Pack continued to operate as a franchise, circulating materials entitled "Rules and Regulations of U.S. Pack" and "Addendum to Rules and Regulations of U.S. Pack," which maintained the franchise structure of operations.  (Pls.' Rule 56.1 Stmt. ¶ 59, Exhibit 8.)  Plaintiffs also allege that franchise fees continued to be withheld from Plaintiffs' paychecks after U.S. Pack's withdrawal of its franchise registration.  (2nd Aff. of Peter Glazman ("Glazman 2") at 6-15.)

Under the terms of the Offering Prospectus, U.S.

Pack's franchise gave fee-paying franchisees a license to use U.S. Pack's two-way radio system, equipment and trade name in the business of picking up and delivering packages, and to receive a commission for the pick-ups and deliveries. (Defs.' Rule 56.1 Stmt. Exhibit 1, 00009, 00015-29.) The Offering Prospectus contains a section entitled "Rules and Regulations," which sets forth requirements for U.S. Pack drivers, including requirements to wear uniforms, drive white vans with U.S. Pack logos, and attend training programs. (Id.)

Most of the thirteen Plaintiffs acknowledge signing a written document while working as drivers for U.S. Pack, but many dispute that the documents they signed were the "Franchise Book" and "Subscription Agreement" that were part of the Offering Prospectus registered with the state Law Department, and which Plaintiffs were shown at their depositions. (Pls.' Rule 56.1 Stmt. ¶ 21; Defendants' Analysis of the Parties' Statements Pursuant to Local Rule 56.1 ("Defs.' Rule 56.1 Anal.") ¶ 21; Aff. of Peter Redaj ("Redaj") at 26; Aff. of Stephen Holesa ("Holesa") at 12-17; Aff. of Radomir Maler ("Maler") at 17, 25-29, 37; Aff. of Andrzej Szycowski ("Szycowski") at 15-16, 39-40, 44; Aff. of Keith McFarland ("McFarland") at 19, 77, 82; Aff. of Robert Ondusko ("Ondusko") at 40-41, 62; 1st Aff. of

Pavol Vysovsky ("Vysovsky 1") at 89-94, 100; Aff. of
Jaroslav Kroshnyi ("Kroshnyi") at 60-63; Aff. of Milan
Petrilak ("Petrilak") at 24-25; Aff. of Stanislav Bulik
("Bulik") at 62-65; Aff. of Jacob Imas ("Imas") at 30-32.)
Defendants have produced signature pages bearing the
signatures of only six of the thirteen plaintiffs (Defs.'
Rule 56.1 Anal. Exhibit A.)

Many of the Plaintiffs assert that they were not
allowed time to read the agreement or accompanying
materials prior to signing.  Plaintiffs also assert that
they were refused their own copy of the materials, despite
having expressed concern about their lack of clarity
regarding the agreement terms, in some cases due to their
inability to speak and read English proficiently.  (Holesa
at 14-19; Vysovsky 1 at 53-54, 59-62; Bulik at 66-67;
Szycowski at 16-19; Kroshnyi at 60-64.)  The majority of
Plaintiffs are immigrants to the United States, many of
whom are limited in their ability to speak and read
English.

Both parties agree that U.S. Pack later implemented a
schedule of commission rates that differed from the rates
quoted in the Offering Prospectus (in the Driver Payouts
document), and that Defendant Glazman and his employees
sometimes negotiated different rates orally with individual

drivers.  (Pls.' Rule 56.1 Stmt. ¶ 46; Defs.' Rule 56.1
Anal. ¶ 46.)  Plaintiffs additionally allege that they were
orally guaranteed commission rates of 60 to 65 percent.
(Defs.' Rule 56.1 Stmt. ¶¶ 13-14.)

     Plaintiff Radomir Maler executed a Release of Claims
in favor of U.S. Pack on June 1, 2000 and received $12,000
in consideration for this release.  (Defs.' Rule 56.1 Anal.
¶¶ 28-29.)

### b. Procedural History

     The original complaint in this action was filed in
this court on March 26, 2001.  Plaintiffs filed an amended
complaint on June 21, 2004, and Defendants filed an answer
on August 11, 2004.  Since the filing of the original
complaint, additional plaintiffs have been joined in the
action and the action has been dismissed as to plaintiffs
Jozef Stofa and Ireneusz Sawczyszyn.  There are currently
thirteen plaintiffs who are party to the action.

     Defendants' motion to dismiss the complaint in its
entirety was denied on October 19, 2004, and discovery was
completed as of July 11, 2005.

     On November 15, 2005, Defendants filed this motion for
summary judgment to dismiss the action in its entirety and
to amend their answer.

### II. DISCUSSION

### a. Defendants' Motion to Amend their Answer

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading more than 20 days after the initial pleading is within the court's discretion, and "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Denial of leave to amend must be based on some substantial reason, such as undue delay in seeking leave to amend, bad faith, or prejudice to the opposing party. See State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981). Mere delay, absent a showing of bad faith or undue prejudice, does not generally justify a denial of leave to amend. See Middle Atlantic Utilities Co. v. S.M.W. Dev. Co., 392 F.2d 380, 384 (2d Cir. 1968).

Here Defendants seek to amend their answer to include the affirmative defenses of estoppel, release, Statute of Frauds, and waiver. The court does not find that Defendants' addition of these defenses at this stage in the litigation is so unreasonable or burdensome to the Plaintiffs that the request should be denied. Nor is there evidence of bad faith on the part of Defendants. While Defendants' motion to amend their answer comes after the close of discovery, the additional affirmative defenses do not raise new areas of inquiry such that Plaintiffs are

likely to be prejudiced by not having known of Defendants'
intention to raise these affirmative defenses prior to the
close of discovery.  Extensive discovery was conducted on
the circumstances surrounding the oral and written
agreements addressed by Defendants' affirmative defenses,
and we find that it is unlikely that prior notice of these
affirmative defenses would have substantially altered
Plaintiffs' strategy in the discovery phase.

Defendants' motion to amend their answer to include
the affirmative defenses of estoppel, release, Statute of
Frauds, and waiver is therefore GRANTED.

### b. Defendants' Motion for Summary Judgment

### i. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that
summary judgment should be granted "if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c). "A dispute is not 'genuine' unless
'the evidence is such that a reasonable jury could return a
verdict for the nonmoving party.'" Nabisco, Inc. v. Warner-
Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 248).

In weighing a motion for summary judgment, ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion.  See Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990).  However, "the non-moving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(citing Fed. R. Civ. P. 56)(emphasis omitted).  "[C]onclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996)(citations omitted).

### ii. Plaintiffs' Federal Claims

Plaintiffs do not oppose the portions of Defendants' motion for summary judgment that seek the dismissal of claims for unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA") and for failure to withhold and pay Social Security and Medicare taxes pursuant to 26 U.S.C. §

3102 ("FICA").

Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact with regard to their claims under FLSA and FICA, and Defendants' motion for summary judgment is GRANTED as to the overtime wages claims under the FLSA and NYLL.  The Court will address these claims briefly.

### 1. The FLSA Claims

Plaintiffs bring a claim for unpaid overtime wages pursuant to the FLSA.  The FLSA confers upon employees not exempted from coverage the right to be paid one and one-half times the regular hourly rate for overtime work.  29 U.S.C.A. § 207 (West 1998).  Under the Motor Carrier Exemption to the FLSA, the following types of employees are exempted from entitlement to overtime wages:

> [T]hose employees...whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) as that of a driver,...and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce.

29 C.F.R. § 782.2 (2007).  See also 49 U.S.C.A. § 31502(b)(2) (West 2007) (Motor Carrier Act).

Plaintiffs qualify as drivers within the meaning of section (i) above, as the exemption applies to "partial-duty drivers...who drive in interstate or foreign commerce

as part of a job in which they are required also to engage in other types of driving or nondriving work." 29 C.F.R. § 782.3 (2007).  Plaintiffs also meet the criteria of section (ii) because under the language of the statute, the work of a qualifying driver "directly affects 'safety of operation'" in the meaning of the Motor Carrier Act "whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of that Act." 29 C.F.R. § 782.3 (2007).

Even a modest amount of interstate driving may exempt a driver from the FLSA.  See Cariani v. D.L.C. Limousine Service, Inc., 363 F.Supp.2d 637, 645-49 (S.D.N.Y. 2005). Plaintiffs' deposition testimonies indicate that they all regularly made deliveries across state lines; Plaintiffs therefore fit squarely within the statutory language of the Motor Carrier Exemption.  Moreover, in their brief in opposition to Defendants' summary judgment motion, Plaintiffs do not contest Defendants' arguments regarding the FLSA claims. For these reasons, the Court finds that there is no lingering ambiguity with regard to Plaintiff's FLSA claim, and Defendants' motion is GRANTED as to the FLSA claim.

### 2. Plaintiffs' Claim under 26 U.S.C. § 3102

Plaintiffs bring a claim for relief under 26 U.S.C. § 3102, the Federal Insurance Contributions Act, alleging that Plaintiffs were employees of Defendants, and that Defendants failed to make certain payments on Plaintiffs' behalf to the Social Security Administration in violation of 26 U.S.C. § 3102.  The Court agrees with Defendants that the tax statutes in question are revenue-producing in nature and do not give rise to a private right of action. See Deleu v. Scaife, 775 F.Supp. 712, 716-17 (S.D.N.Y. 1991); McDonald v. S. Farm Bureau Life, 291 F.3d 718, 722-26 (11th Cir. 2002).  Defendant's motion for summary judgment as to this claim is therefore GRANTED.

### iii. Supplemental Jurisdiction over State Law Claims

Plaintiffs filed this lawsuit invoking the Court's federal question jurisdiction with regard to their claims under the FLSA and FICA, and the Court retained supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 (2000).  A federal court may exercise supplemental jurisdiction over state law claims whenever a federal law claim confers subject matter jurisdiction on the court and both claims "derive from a common nucleus of operative fact." Raucci v. Town of Rotterdam, 902 F.2d 1050, 1054 (2d Cir. 1990), quoting

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725
(1966).  Under 28 U.S.C. § 1367(c)(3), a district court may
decline to exercise jurisdiction over a claim that would
otherwise fall under its supplemental jurisdiction if "the
district court has dismissed all claims over which it has
original jurisdiction." In providing that a district court
"may" decline to exercise such jurisdiction, this
subsection indicates that it is permissive rather than
mandatory.  Valencia v. Lee, 316 F.3d 299, 305 (2d Cir.
2003).  Factors a court should consider in determining
whether to refrain from exercising supplemental
jurisdiction when all claims over which that court has
original jurisdiction have been dismissed include: (1) the
length of time the matter has been before the court; (2)
the proximity to the trial date; and (3) the predominance
of issues of federal, as opposed to local, concern.  Drexel
Burnham Lambert, Inc. v. Saxony Heights Realty Assoc., 777
F.Supp. 228, 240 (S.D.N.Y. 1991), citing McLearn v. Cowen &
Co., 660 F.2d 845 (2d Cir. 1981).

     While the dismissal of all of Plaintiffs' federal
claims would ordinarily weigh in favor of the Court's
declining to exercise supplemental jurisdiction over the
remaining state claims, numerous factors in the present
case weigh in favor of exercising jurisdiction over these

claims.  This case has been before the Court since 2001, and the parties have engaged in extensive motion practice before the Court.  Discovery has been completed.  The advanced stage of the litigation and the Court's long familiarity with the issues in the case, combined with the likely hardship to both parties should plaintiff be forced to re-file in state court, constitute circumstances sufficiently compelling that the Court elects to retain jurisdiction over the case.

The claims at issue do not appear to present particularly novel questions of state law, providing further support for this court's exercise of supplemental jurisdiction over Plaintiffs' state law claims.  The claims also do not invoke state law issues so fundamental or proprietary to state governance that they may not be evaluated by a federal court.  Plaintiffs' state claims are brought under the Franchise Sales Act, the New York Labor Law, and contract law; all are areas of law that have been addressed fairly extensively by New York state courts.  This Court is competent to consider claims under the Franchise Sales Act, the New York Labor Law, and contract law, drawing on the substantial body of New York state law in these areas.

### iv. Plaintiffs' abandoned state claims

Plaintiffs have not contested Defendants' arguments in favor of summary judgment for certain state claims, including Plaintiffs' claims for unpaid overtime wages under the NYLL, the claims for recovery under tort and quasi-contract theories, and the contract claims regarding contracts to purchase motor vehicles and contract claims against Peter Glazman in his individual capacity. Defendants' arguments against these claims are uncontested, and as such, the Court finds that Plaintiffs have failed to establish the existence of a genuine issue of material fact with respect to these claims. Defendants' motion for summary judgment is therefore GRANTED as to these claims.

### v. Plaintiffs' Remaining State Law Claims

### 1. Contract Claims

Plaintiffs claim that Defendants are liable under contract law for failing to honor oral agreements regarding specific commission rates negotiated with individual Plaintiffs. Defendants contend that Plaintiffs' allegations of breach of oral contract are barred by the integration clause contained in the Subscription Agreement and by the Statute of Frauds.

Defendants argue that the integration clause contained in the Subscription Agreement invalidates any prior or subsequent oral agreements that Plaintiffs may seek to

enforce.  Plaintiffs argue that the integration clause does
not bar enforcement of the oral contracts because
Defendants' violations of the Franchise Sales Act render
the contracts in question unenforceable.  However,
violations of the Franchise Sales Act do not render the
underlying contract unenforceable by the violating party.
TKO Fleet Enter., Inc. v. Elite Limousine Plus, 708
N.Y.S.2d 593, 596 (Sup. Ct. 2000), aff'd 286 N.Y.S.2d 436
(2d Dep't 2001).  The Franchise Sales Act also does not
prohibit or purport to regulate negotiations of terms
different from those contained in the Offering Prospectus
subsequent to the registration of the Offering Prospectus
with the state law department.  Southland Corp. v. Abrams,
560 N.Y.S.2d 253, 256-58 (Sup. Ct. 1990).  The Franchise
Sales Act therefore does not operate to nullify the
integration clause at issue; neither does it bar the
negotiation of terms different from those contained in the
Offering Prospectus.

     However, an integration clause, where enforceable,
applies only to oral agreements made prior to the signing
of the contract containing the integration clause, and not
to those made subsequent to the written contract.  See
Manhattan Motorcars, Inc. v. Automobili Lamborghini,
S.P.A., 2007 WL 1988144 (S.D.N.Y. 2007).  The integration

clause in the Subscription Agreement therefore does not operate to bar the enforcement of oral contracts negotiated after the signing of the agreement.

Defendants also argue that the oral contracts are unenforceable under the Statute of Frauds. New York's Statute of Frauds provides in relevant part that:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: [...] By its terms is not to be performed within one year from the making thereof [...]

Gen. Oblig. Law § 5-701(a). New York courts narrowly interpret the Statute of Frauds' application to agreements not to be performed within one year, holding that an agreement is outside the reach of the Statute of Frauds if it is capable, by its terms, of being performed within one year. N. Shore Bottling Co. v. Schmidt & Sons, Inc., 239 N.E.2d 189, 191-93 (N.Y. Sup. Ct. 1968); See also Majestic Farms Supply Ltd. v. Serv. Riding Apparel, Ltd., 137 A.D.2d 501, 524 (N.Y. App. Div. 2d Dep't 1988). Courts have emphasized that for a contract to be capable of being performed within one year under the meaning of the Statute of Frauds, the express terms of the oral contract must provide for the possibility of performance within one year. Implied termination terms are not sufficient to take an

oral contract out of the statute.  Burke v. Bevona, 866
F.2d 532, 538 (2d Cir. 1989), citing Zupan v. Lumberg, 2
N.Y.2d 547, 550 (1957).

The oral contracts that Plaintiffs seek to enforce
include no specific terms beyond the guarantee of a
commission rate of between 60 and 65 percent of the
customer payout for each delivery.  Plaintiffs have not
alleged that these oral contracts included additional terms
regarding the duration of the agreements or the ability of
either party to terminate the agreements.  Plaintiffs have
also not alleged that the oral contracts regarding
commission rates implicitly incorporated the terms of the
agreement contained in the Offering Prospectus, which does
contain provisions regarding the term of the agreement and
possible termination of the agreement.  Even if Plaintiffs
had advanced this argument, however, under the standards
established in New York case law, the implied incorporation
of provisions making the oral contracts capable of being
performed within one year would be insufficient to exempt
the agreements from the reach of the Statute of Frauds.

The Second Circuit explains in Burke that the
requirement that an oral contract by its express terms be
capable of performance within one year in order to be
exempted from the Statute of Frauds protects contracting

parties from being held indefinitely by the terms of oral agreements, which are, by their nature, susceptible to fraud and distortion.  866 F.2d at 538.  In the instant case, Plaintiffs allege that they were promised the higher commission rates on an ongoing basis, implicitly for an indefinite period, while Defendants argue that some such guarantees were made on a per-delivery basis, but not as part of an ongoing arrangement.  The terms of the oral agreements as represented by Plaintiffs do not contain express terms that would potentially limit them to performance within one year.

Therefore, interpreting all ambiguities in the light most favorable to the Plaintiffs, the Court finds that the Statute of Frauds applies to bar enforcement of the oral agreements in question, and Defendants' motion for summary judgment is GRANTED as to Plaintiffs' contract claims.

## 2. Franchise Sales Act Claims

Plaintiffs allege that Defendants' sales of franchises to the Plaintiffs violated numerous provisions of the New York Franchise Sales Act, N.Y. Gen. Bus. Law § 680 (2007). The Franchise Sales Act regulates the registration of franchises in New York State and enumerates detailed requirements for companies establishing, advertising, and selling franchises.  These requirements are designed to

provide prospective franchisees with accurate information regarding a given franchise offering and to prevent fraud in the sale of franchises.  Id. at § 680.  Given the Franchise Sales Act's remedial goals, courts have held that its anti-fraud provisions should be interpreted liberally. See A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc., 162 Misc.2d 941, 941-42 (Sup. Ct. N.Y. County 1994), affirmed 625 N.Y.S.2d 904 (App. Div. 1995), leave to appeal granted, 628 N.Y.S.2d 478 (App. Div. 1995), affirmed as modified, 87 N.Y.2d 574 (1996).

### a. Timeliness

Section 691(4) of the Franchise Sales Act provides that "[a]n action shall not be maintained to enforce a liability created under this section unless brought before the expiration of three years after the act or transaction constituting the violation."  The violations at issue here, discussed infra, include violations of the Franchise Sales Act's registration provisions, § 683 of the Act, and the fraud provisions in § 687 of the Act.

As discussed in greater detail infra, Plaintiffs point to evidence in the record supporting multiple possible violations by Defendants of the Franchise Sales Act's registration provisions, § 683 of the Act.  For the alleged violations involving Defendants' failure to provide

Plaintiffs with copies of the Offering Prospectus, §
683(8), the act constituting the violation would have
occurred at the beginning of each Plaintiff's employment
with U.S. Pack.  For the alleged violation involving
Defendants' continuation of franchise operations following
their withdrawal of the registered franchise, the act
constituting the violation would have occurred sometime
between 1997 and 1999 when, in violation of § 683(1),
Defendants began to operate the franchise without the
benefit of registration.

The original complaint in this action was filed on
March 26, 2001.  Because we find that a genuine issue of
material fact exists with regard to both of the above bases
for violations of the Franchise Sales Act, the claims are
timely for all Plaintiffs: (1) who were employed by U.S.
Pack as of March 26, 1998, as the withdrawal occurred
sometime between 1997 and 1999; or (2) who began their
employment with U.S. Pack on or after March 26, 1998.

Plaintiffs also allege that Defendants violated the
Franchise Sales Act's fraud provisions by misleading
Plaintiffs as to the terms of their employment with U.S.
Pack at the initiation of each Plaintiff's employment.  As
with the acts in potential violation of § 683(8), supra,
the relevant act for the purposes of the fraud allegations

22

would have occurred at the initiation of each Plaintiff's employment with U.S. Pack, leaving the analysis for evaluating timeliness unchanged.

Plaintiffs Stanislav Bulik, Stanislav Teleky and Jana Bulikova were not employed by U.S. Pack on or after March 26, 1998, making their Franchise Sales Act claims untimely under § 691(4), as the acts giving rise to their claims could not have occurred after the cessation of their employment with U.S. Pack.  Plaintiff Stanislav Bulik stopped working for U.S. Pack in April of 1997.  (Bulik at 45.)  Stanislav Teleky stopped working for U.S. Pack in October of 1997.  (Teleky at 12.)  Jana Bulikova last worked for U.S. Pack in December of 1996 or January of 1997.  (Bulikova at 13.)  U.S. Pack payment records indicate that all other plaintiffs were employed by U.S. Pack on or after March 28, 1998.  (Defs.' Rule 56.1 Stmt. ¶ 19.)  Because Plaintiffs Bulik, Teleky and Bulikova have failed to bring an action in accordance with the timeliness provisions set by § 691(4), Defendants' motion for summary judgment is GRANTED as to these Plaintiffs' claims under the Franchise Sales Act.

> **b. Plaintiffs' Claims Regarding the Franchise Sales Act's Registration Requirements, §**

683

The Franchise Sales Act's provisions regulating registration of franchise prospectuses require a company to register an offering prospectus with the New York Department of Law prior to the negotiation or sale of a franchise, and to submit amendments whenever the prospectus is modified.  N.Y. Gen. Bus. Law § 683(1), (9) (2007).  The Act details specific information that must be included in an offering prospectus, and includes a requirement that the prospective franchisee be provided:

> [A] copy of the offering prospectus, together with a copy of all proposed agreements relating to the sale of the franchise at the earlier of (a) the first personal meeting between the franchisor or its agent and the prospective franchisee, (b) at least ten business days prior to the execution of a binding franchise or other agreement, or (c) at least ten days prior to the receipt of any consideration in connection with the sale or proposed sale of a franchise.

Id. at § 683(8).  The Act also requires that the franchisor maintain complete and accurate records that may be subject to inspection by members of the law department.  Id. at § 683(9).

Plaintiffs point to several areas in the record as demonstrating Defendants' failure to provide franchisees with copies of the Offering Prospectus (or Franchise Book) in violation of the Franchise Sales Act's registration

requirements in § 683(8).  Defendants have produced
signature pages for only six of the thirteen plaintiffs.
(Defs.' Rule 56.1 Anal. Exhibit A.)  Plaintiffs testify
generally that the documents they signed were thinner or
otherwise different from the Franchise Book shown to them
at their depositions.  Most Plaintiffs testify that they
were not provided with copies of the Franchise Book, and
that they were permitted to look at the documents given to
them only for a very short time before or after signing the
required form.  Milan Cuba, who met with all Plaintiffs at
the start of their employment with U.S. Pack, states that
he did not provide franchisees with a copy of the Offering
Prospectus at their initial meetings.  (Aff. of Milan Cuba
("Cuba") at 53, 57.)  The record therefore establishes a
triable issue of fact with respect to Defendants' violation
of § 683(8).

   Plaintiffs also claim that U.S. Pack's unilateral
"withdrawal" of their registered franchise around 1997,
1998 or 1999 presents a further basis for liability on the
part of the Defendants under the Franchise Sales Act.
Testimony from Plaintiffs and Defendants indicates that the
franchise was "withdrawn" sometime during this three-year
period, and that new materials were circulated to
employees, essentially continuing U.S. Pack's operation as

a franchise, with franchise fee payments continuing to be
required from franchisees.  (1st Aff. of Peter Glazman
("Glazman 1") at 63-64; Glazman 2 at 3.)  The Court
presumes that Defendants' references to a "withdrawal" of
the franchise refer to the withdrawal of their franchise
registration with the New York State Law Department.

The evidence presented strongly suggests that U.S.
Pack has continued to operate as a franchise,
notwithstanding the withdrawal.[1]  Plaintiffs claim, and
Defendants do not dispute, that Plaintiffs continued to be
charged a franchise fee following the withdrawal.
Deposition testimony from Peter Glazman and Milan Cuba, as
well as Plaintiffs, indicates that U.S. Pack continued to
operate as before.  The documents entitled "Rules and
Regulations of U.S. Pack" and "Driver Payouts," apparently
circulated during or after the withdrawal, describe rules
and practices substantially equivalent to those contained

---

[1] According to § 681(3) of the Franchise Sales Act, a franchise is:

a contract or agreement, either expressed or implied, whether oral or
written, between two or more persons by which:

a) A franchisee is granted the right to engage in the business of
offering, selling or distributing goods or services under a marketing
plan or system prescribed in substantial part by a franchisor, and the
franchisee is required to pay, directly or indirectly, a franchise fee,
or

b) A franchisee is granted the right to engage in the business of
offering, selling, or distributing goods or services substantially
associated with the franchisor's trademark…and the franchisee is
required to pay, directly or indirectly, a franchise fee.

in the Offering Prospectus previously registered with the New York Law Department.  (Defs.' Rule 56.1 Analysis § 46.) Plaintiffs continued to perform delivery services under the U.S. Pack brand, regulated by U.S. Pack rules, in exchange for a franchise fee, thereby meeting the definition of a franchise under § 681(3) of the Franchise Sales Act.

Defendants' continued operation of a franchise in the absence of a formal registration with the New York Law Department constitutes an additional basis for violation of the registration requirements in § 683 of the Franchise Sales Act.  Alternatively, if the previously filed Offering Prospectus were found still to be in effect, Defendants' withdrawal and circulation of the "Driver Payouts" document would appear to violate § 683(9), which requires written notification in the case of any amendments to registration materials filed with the law department.

### c. Plaintiffs' Claims Regarding the Franchise Sales Act Fraud Provisions, § 687

Plaintiffs additionally allege that Defendants violated the Franchise Sales Act's fraud provisions, § 687, by misleading potential franchisees regarding the terms of the franchise agreement.[2]  Central to Plaintiffs'

---

[2]  687(2) provides:

allegations are their claims that Milan Cuba and Defendant Peter Glazman orally guaranteed them commission rates above those guaranteed in the U.S. Pack Offering Prospectus, or in the "Driver Payouts" document circulated among employees.[3]  Defendants argue that Plaintiffs' claims regarding these oral guarantees are barred from consideration by the parol evidence rule and by the doctrine of waiver.

Under New York law, the parol evidence rule bars claims based on an oral modification of a contract where the contract contains an integration clause and the terms of the contract are unambiguous.  See Leung v. Lotus Ride, Inc., 198 A.D.2d 155, 156 (App. Div. 1993) (holding that Plaintiffs' fraud claims based on oral misrepresentations

_____

It is unlawful for a person, in connection with the offer, sale or purchase of any franchise, to directly or indirectly:

(a) Employ any device, scheme, or artifice to defraud.

(b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.  It is an affirmative defense to one accused of omitting to state such a material fact that said omission was not an intentional act.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

[3] Ten plaintiffs claim they were promised a 60% commission on all deliveries; two plaintiffs claim they were promised a 65% commission; one plaintiff, Jana Bulikova, does not claim to have been promised a fixed commission rate.  (Defs.' Rule 56.1 Stmt. ¶¶ 13-14).

regarding the number of franchises to be sold were barred
by the parol evidence rule where the franchise agreement
contained an express provision stating that the number
would be unlimited). Furthermore, the Franchise Sales Act
itself does not regulate the terms of a Franchise
Agreement, and therefore has no authority to regulate
additional negotiations between the franchisor and
franchisee subsequent to the registration of a Franchise
Agreement. Southland Corp. v. Abrams, 148 Misc.2d 390,
396-97 (N.Y. Sup. Ct. 1990). However, the parol evidence
rule may not be applied to frustrate the purposes of the
Franchise Sales Act. Mon-Shore Mgmt., Inc. v. Family
Media, Inc., 584 F.Supp. 186, 195 (S.D.N.Y. 1984) (holding
that the parol evidence rule did not bar proof of omissions
from the prospectus, part of the franchise sales contract).

The Offering Prospectus registered by U.S. Pack
contains unambiguous terms regarding compensation for U.S.
Pack drivers. Evidence of Plaintiffs' oral negotiations
with Defendants, where Plaintiffs had signed an agreement
with unambiguous terms and this agreement had been
previously filed with the state law department, would
ordinarily be barred as proof of fraud on the part of
Defendants. However, Plaintiffs dispute that the agreement
they signed was the registered Offering Prospectus shown to

them at their depositions.  Many Plaintiffs additionally
claim that they were unable to ascertain the terms of the
agreement due to Defendants' refusal to allow them time to
read the agreement prior to signing and Defendants' failure
to provide them with a copy of the agreement.  Defendants
have produced signed signature pages for only six of the
thirteen Plaintiffs.  These facts call into question the
completeness of the written contract terms, standing alone,
as a representation of Plaintiffs' understanding of the
contract.  Further, Defendants' withdrawal of the franchise
calls into question whether the terms of this agreement
continued to be binding on Plaintiffs subsequent to the
withdrawal.

We find the evidence of Defendants' procedural
failings to be of particular concern given the unequal
bargaining power between the parties; Plaintiffs are not
sophisticated business negotiators, and many had severely
limited knowledge of English at the time that they entered
into the franchise agreement with U.S. Pack.  The Franchise
Sales Act's expressed goal of protecting potential
franchisees from fraud or deceptive practices on the part
of franchisors makes this a particularly relevant concern
in evaluating liability under the Act.  Together with
evidence of Defendants' violations of the Franchise Sales

Act's registration provisions, the questions surrounding Defendants' withdrawal of the franchise registration and Plaintiffs' clear disadvantage in the bargaining process are factors that compel consideration of Plaintiffs' evidence of oral agreements with respect to Defendants' alleged commission of fraud in violation of § 687(2) of the Act.

Defendants also argue that Plaintiffs are barred from presenting evidence of oral agreements for higher pay rates because Plaintiffs waived any rights under these agreements by continuing to work at lower pay rates.  This argument is inapplicable here.  Because the oral agreements are relevant to Plaintiffs' fraud claims under the Franchise Sales Act solely as evidence of Defendants' alleged fraud in connection with the offering and sales of franchises, Plaintiffs' subsequent behavior with respect to the alleged agreements has no bearing on their admissibility.  Triable issues of fact therefore exist with respect to Defendants' possible violations of the registration and fraud provisions of the FSA, §§ 683 and 687.

### d. Damages

For violations of the Franchise Sales Act's disclosure requirements and fraud provisions, the Act authorizes civil money damages, providing for rescission with interest at

six percent per year from the date of purchase, and reasonable attorneys fees and court costs for willful and material violations.  N.Y. Gen. Bus. Law § 691(1) (2007).

Defendants argue that Plaintiffs cannot claim damages from Defendants' failure to formally rescind the franchise because Plaintiffs continued to earn fees in connection with U.S. Pack's operation and therefore can claim no material injury.  However, the amount of damages due to individual plaintiffs under the FSA is inconclusive based on the facts currently before the Court.  Plaintiffs were employed by U.S. Pack for differing lengths of time, and neither party has produced comprehensive records of the franchise fees paid by Plaintiffs to U.S. Pack.

The Franchise Sales Act additionally provides for attorneys' fees and court costs when the violations are "willful."  For purposes of the Franchise Sales Act, "willful" means no more than voluntary or intentional, as opposed to inadvertent.  Reed v. Oakley, 172 Misc.2d 655, 658 (N.Y. Sup. Ct. 1996) ("Requiring the franchisee to prove the higher standard of malice in failing to comply with the Act would apply a restrictive, not liberal, construction of the Act, and limit its effectiveness.") Defendants have not claimed that any of their actions with respect to the franchise agreements at issue were

inadvertent or unintentional.  Clearly material issues of fact exist regarding Plaintiffs' entitlement to damages under the Franchise Sales Act.

### e. Radomir Maler's Release and Waiver of Claims

Defendants argue that the Release and Waiver signed by Plaintiff Radomir Maler operates to defeat Maler's claims under the Franchise Sales Act, in addition to his claims under the New York Labor Law.  However, the plain language of the Franchise Sales Act prohibits a waiver of rights under the Act: "It is unlawful to require a franchisee to assent to a release, assignment, novation, waiver or estoppel which would relieve a person from any duty or liability imposed by this article."  N.Y. Gen. Bus. Law. § 687(5) (2007).  See also Reed v. Oakley, 172 Misc.2d 659, 661-62 (N.Y. Sup. Ct. 1996) (holding that the plain language of § 687(5) and the public policy behind the Franchise Sales Act prohibit the use of equitable defenses to escape liability under the Act).

Section 691 of the Franchise Sales Act provides that a person may not file suit under the Act if he received a written offer "at a time when he owned the franchise, to refund the consideration paid together with interest at six percent per year from the date of payment, less the amount

of income earned by the franchisee from the franchise
[...]"  N.Y. Gen. Bus. Law, § 691 (2007).  Under this
section, had Plaintiff Maler received such an offer prior
to the settlement and release, he would be barred from
bringing suit under the Act.  However, Defendants do not
allege that any such offer was made, and Maler testifies
that the negotiations surrounding the settlement pertained
exclusively to Maler's expenditures on the van he leased
from the company.  (Maler at 65-67.)

Plaintiff Maler's release therefore does not bar his
claims under the Franchise Sales Act.


For the foregoing reasons, Defendants' motion for
summary judgment is GRANTED as to Franchise Sales Act
claims brought by Plaintiffs Bulikova, Bulik, and Teleky,
and DENIED as to claims brought by Plaintiffs Vysovsky,
Petrilak, Kroshnyi, Redaj, Maler, Ondusko, McFarland,
Szycowski, Imas and Holesa.

### f. Peter Glazman's Individual Liability

Peter Glazman's individual liability under the
Franchise Sales Act will be discussed fully <u>infra</u>, together
with a discussion of his liability under the New York Labor
Law.

### 3. New York Labor Law Claims

Plaintiffs additionally state claims for unpaid promised wages and unlawful deductions from wages in violation of Article 6 of the New York Labor Law, N.Y. Lab. Law (§§ 193 and 198) (2007).

Sections 193 and 198 of the New York Labor Law expressly apply to employers and employees.  Section 193 states in relevant part:

> No employer shall make any deduction from the wages of an employee, except deductions which [...] are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises.

N.Y. Lab. Law § 193(1) (2007).  Section 198 provides for the award of ordinary costs and attorneys' fees when an employer prevails on a wage claim brought under Article 6 of the Labor Law.  Section 198 additionally provides for liquidated damages in the amount of 25 percent of the total amount of wages due upon a finding of "willful" violation on the part of the employer.  Id. at § 198(1).

### a. Plaintiffs' Claim for Unpaid Promised Wages

Plaintiffs seek damages for unpaid promised wages under § 198 of the Labor Law.  The oral contracts on which Plaintiffs base this claim are the same oral contracts that

served as the basis for their contract claims, discussed
supra.  Though Plaintiffs argue that the Statute of Frauds
is not a defense to a claim for unpaid promised wages under
the Labor Law, this statement is conclusory and without
basis in the text of the Labor Law or in case law.  We find
that the claim for unpaid promised wages is untenable for
the reasons discussed supra, with respect to Plaintiffs'
contract claims.  "The plaintiff cannot assert a statutory
claim for wages under the Labor Law if he has no
enforceable contractual right to those wages."  Tierney v.
Capricorn Investors, L.P., 592 N.Y.S.2d 700, 703 (1st Dep't
1993), appeal denied, 81 N.Y.2d 710 (1993).  Plaintiffs
fail to present evidence of a contract that will satisfy
the Statute of Frauds, and they therefore fail to show the
existence of a genuine issue of material fact with regard
to their Labor Law Claim for unpaid wages.

### b. Plaintiffs' Claim for

### Unlawful Deductions

#### i. "Employees" under § 193

Plaintiffs additionally assert a claim under § 193 of
the Labor Law for unlawful deductions from wages.

Defendants dispute that Plaintiffs are "employees"
within the meaning of the labor law.  Under Article 6 of
the New York Labor Law, the term employee means "any person

employed for hire by an employer in any employment." N.Y. Lab. Law § 190(2) (1986). Section 193 of the Labor Law applies broadly to all "employees" within the meaning of the Labor Law. See Pachter v. Bernard Hodes Group, Inc., 2007 WL 2963876, *2 (2d Cir. 2007). The New York Court of Appeals, applying the common law test to determine employment status under Article 6 of the Labor Law, stated that "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Bynog v. Cipriani Group, Inc., 1 N.Y.3d 193, 198 (2003); See also E. Coast Indus., Inc. v. Becconsall, 301 N.Y.S.2d 778, 779-780 (N.Y. Dist. Ct. 1969) (finding that important considerations for evaluating control in the employment status inquiry included the employer's authority to decide the timing and selection of each job and the employer's right to discharge or fire the employee). The Bynog court listed factors relevant to assessing control, including "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." 1 N.Y.3d at 198. The Court in NLRB v. Fugazy Continental Corp., 603 F.2d 214 (2d Cir. 1979),

found that franchisee drivers qualified as employees under
the National Labor Relations Act where drivers' commissions
were set by the franchisor, the dress, conduct and type of
vehicle were regulated by the franchisor, and the
franchisor retained broad termination power over
franchisees.

According to the terms of the Offering Prospectus, the
document establishing and regulating the franchise
agreements between Plaintiffs and Defendants, U.S. Pack
required all drivers to wear a uniform, drive a white van
bearing the U.S. Pack logo, and attend trainings.  The
Offering Prospectus additionally set a schedule of
commissions and regulated the terms under which drivers
could assign their franchises.  U.S. Pack also retained
broad authority under the Offering Prospectus to hire
additional franchisees and terminate franchisees; during
the initial six month "probationary period," any franchisee
could be terminated at U.S. Pack's complete discretion.
(Defs.' Rule 56.1 Stmt. Exhibit 1 at 000025-26.)
Plaintiffs received all assignments through a centralized
dispatch system.  (Glazman 1 at 124; 137-38.)

Peter Glazman disputes that drivers were required to
wear uniforms, testifying that they were only obligated to
wear uniforms for certain customers, and drivers had the

option of refusing work with these particular customers.
(Glazman 1 at 150.)  Even if Plaintiffs had the choice of
refusing assignments requiring them to wear uniforms, the
centralized dispatch system placed control of the
distribution of assignments out of the hands of Plaintiffs.
Interpreting all ambiguities in the light most favorable to
the Plaintiffs, the Court finds that the issue, whether
Defendants exercised a degree of control over Plaintiffs
consistent with a finding that Plaintiffs were "employees"
of U.S. Pack under the terms of the New York Labor Law, is
one of fact.

> **ii. Deductions "authorized**
> **by" and "for the**
> **benefit" of Employees**
> **under § 193**

Defendants also assert that any deductions made from
Plaintiffs' wages were "expressly authorized in writing" by
the employees and "for the benefit" of the employees, in
accordance with § 193(1) of the Labor Law.  Defendants do
not dispute deductions made from Plaintiffs' wages of fees
associated with vehicle leases for those Plaintiffs leasing
vehicles and of franchise fees for all Plaintiffs.
Plaintiffs also contend, and Defendants apparently do not
dispute, that franchise fees continued to be deducted from

Plaintiffs' wages after the withdrawal of the franchise. The provisions of § 193 require that deductions from employees' wages be <u>both</u> authorized by employees and for the employees' benefit.  N.Y. Lab. Law § 193(1) (2007). Section 193 additionally requires that employers keep copies of employees' authorization on file at the employer's premises.  <u>Id.</u>

Defendants have produced Subscription Agreement signature pages and signed sheets acknowledging receipt of the Offering Prospectus for six Plaintiffs.[4]  The terms of the Subscription Agreement authorize U.S. Pack to deduct from employees' paychecks payments on vehicles leased from U.S. Pack and franchise fees up to a total of $15,000. These signed forms therefore constitute a valid authorization by plaintiffs of the deductions in question. However, Defendants have failed to produce authorizations from the remaining seven Plaintiffs.  Although virtually all Plaintiffs acknowledge having signed something at the start of their employment with U.S. Pack, and it is certainly possible that some or all of them signed authorizations comparable to those signed by the other six, the statute explicitly requires Defendants to keep such an

---

[4] Defendants have produced copies of these two forms signed by Plaintiffs Holesa, Vysovsky, Bulik, Szycowski, Kroshnyi, and Imas. (Defs.' Rule 56.1 Anal. Exhibit A.)

authorization on file at their place of employment.
Interpreting all ambiguities in the light most favorable to
the Plaintiffs, the Court finds that there is a genuine
issue of material fact as to whether the deductions from
Plaintiffs' paychecks were properly authorized in
accordance with the statute with respect to Plaintiffs
Redaj, Maler, McFarland, Ondusko, Petrilak, Teleky and
Bulikova.

    In addition to requiring authorization by employees, §
193 requires that the deductions from employees' wages be
made "for the benefit of the employee."  A deduction made
to enable an employee to furnish one of the prerequisites
of his employment is made "for the benefit of the employee"
in accordance with § 193.  See Rownd v. N.Y. State Guernsey
Breeders' Coop., 87 N.Y.S.2d 272, 273 (N.Y. Mun. Ct. 1949)
(Deductions from wages to purchase a bond required by the
employer did not violate the Labor Law prohibitions against
deductions from wages for the benefit of the employer.)
Deductions made for the benefit of a union, rather than for
the benefit of the employer, have also been held not to
violate the Labor Law.  See Greenwald v. Chiarella, 63
N.Y.S.2d 49, 51-52 (App. Div. 1st Dep't 1946).

    There is a strong case that, in conjunction with a
franchise agreement, deductions made in payment of a

41

franchise fee and vehicle lease were "for the benefit of
the employee." According to the terms of the Offering
Prospectus, the franchise fee constituted the employee's
required payment towards the eventual purchase of a
franchise, and the system of deducting the fee from an
employee's monthly paycheck rather than requiring an up-
front payment in total made the purchase of a franchise
feasible for those employees who could not finance the
purchase of the franchise in a single payment. The vehicle
lease was not required of employees who chose to provide
their own vehicle and, like the franchise fee deduction,
provided a system of payment for those employees who
preferred a payroll deduction to the outright purchase of a
vehicle. Defendants contend, and Plaintiffs do not
dispute, that in all cases U.S. Pack provided full
ownership of leased vehicles to employees once they had
leased the vehicles for a total of four full years.
(Defs.' Rule 56.1 Stmt. Glazman Affidavit ¶ 18.)

Plaintiffs also claim, however, that U.S. Pack
continued to deduct franchise fee payments from their
paychecks following the withdrawal of the franchise between
1997 and 1999. Defendants do not address this claim, and
the facts are inconclusive on this issue. As discussed,
supra, with regard to Plaintiffs' Franchise Sales Act

claims, material issues of fact remain as to the effect of
Defendants' withdrawal of the franchise.  For the purposes
of analyzing Plaintiffs' Franchise Sales Act claims, the
Court found that, interpreting the factual ambiguities in
the light most favorable to the Plaintiffs, the continued
operation of U.S. Pack in the manner of a franchise
following the withdrawal could potentially have resulted in
an effective continuation of the franchise under the
Franchise Sales Act's definition.  Analyzing Plaintiffs'
Labor Law claims, all ambiguities of fact must similarly be
interpreted in the light most favorable to the Plaintiffs'
claims.  Given Defendants' obvious intent to discontinue
the franchise, in combination with the factual ambiguities
surrounding their withdrawal of the franchise, The Court
finds that there is a material issue of fact surrounding
the question of whether the franchise payment deductions
continued to go towards the purchase of a franchise
following the withdrawal, and therefore, whether the
deductions were "for the benefit of the employee" in
accordance with § 193 of the Labor Law.

### c. Plaintiff Radomir Maler's
### Release of Claims

The Release of Claims executed by Plaintiff Maler, for
which he received $12,000 in consideration, states in clear

language that Maler waives all claims against U.S. Pack and its officers, shareholders and directors.  (Defs.' Rule 56.1 Stmt. Exhibit 2.)  Though the Franchise Sales Act expressly prohibits a waiver of rights under the Act, the New York Labor Law contains no such provision.  In the absence of an express public policy against release or ambiguities in the language of the release, we find that such a release is binding.  Where "the language of a release is clear and unambiguous, the signing of a release is a 'jural act' binding on the parties."  <u>Booth v. 3669 Delaware, Inc.</u>, 92 N.Y.2d 934, 935 (1998).  Furthermore, as noted in Defendants' brief, New York has a "public policy favoring enforcement of settlements."  <u>Id.</u>  <u>Accord</u> <u>Krumme v. Westpoint Stevens, Inc.</u>, 238 F.3d 133, 144 (2d Cir. 2000).

Defendants' motion for summary judgment is therefore GRANTED as to Plaintiff Radomir Maler.

### 4. Peter Glazman's Individual Liability under the New York Labor Law and the Franchise Sales Act

#### a. Glazman's Individual Liability under the New York Labor Law

Defendants argue that even if Plaintiffs were able to

recover under the New York Labor Law, they would be barred under New York law from recovering against Defendant Peter Glazman as an individual.  Defendants cite <u>Stoganovic v. Dinolfo</u>, 461 N.Y.S.2d 121 (App. Div. 4th Dep't 1983), for the proposition that no private civil cause of action arises under the New York Labor Law for recovery of unpaid wages.

<u>Stoganovic</u> expresses the concern that should courts hold corporate officers personally liable for the unpaid wages of corporate employees, the officers could have unlimited liability.  <u>Id.</u> at 123.  However, the court in <u>Chung v. New Silver Palace Rest.</u>, 272 F.Supp.2d 314, 318 (S.D.N.Y. 2003), argued persuasively that the <u>Stoganovic</u> holding was limited to the case of a claim for unpaid wages under 198-a and 198-c brought against corporate officers and directors <u>who did not qualify as employers</u>.  The <u>Chung</u> court found a private right of action to exist against individual restaurant owners under § 196-d (prohibiting employers from sharing in employees' tips) and § 198-b (proscribing any demand by employers for kickback of an agreed rate of wages), where defendants met the Labor Law's definition of "employer" in § 190, applying the <u>Cort v. Ash</u> test to find that a private civil right of action may be implied under Article VI generally.  <u>Id.</u> at 318, citing

Cort v. Ash, 422 U.S. 66, 78 (1975) (holding that a private right of action may be implied where (1) plaintiffs are within the class for whose special benefit a statute was enacted; (2) there is indication of a legislative intent, explicit or implicit, to create a remedy for the plaintiffs; and (3) implying a remedy is consistent with the underlying purposes of the legislative scheme).

We find that the Chung court's application of the Cort v. Ash test convincingly establishes the existence of a private right of action under Article VI. As in Chung, Plaintiffs in the instant case qualify as "employees" of U.S. Pack under the New York Labor Law, supra iv(3)(a), and are therefore within the class for whose benefit the statute was enacted.

Further, the remedies provided under Article VI of the Labor Law suggest a legislative intention in favor of a civil remedy. As articulated by the Chung court, Section 198 provides for costs and remedies in the case of substantive violations of Article VI, and therefore cannot be understood except in connection with a private civil remedy against employers.[5] 272 F.Supp.2d at 317. The plain

---

[5] Section 198 provides in relevant part:

1. In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court may allow such employee in addition to ordinary costs, a reasonable sum, not exceeding

language of § 198 assumes that employees have the ability

to institute actions pursuant to the provisions of Article

VI, providing that they may recover their expenses where

they sue upon a wage claim,[6] that they may recover

reasonable attorneys' fees where they bring such a suit,[7]

and that there is a six-year statute of limitation for such

suits.[8]   Thus, § 198 assumes that employees have the ability

to institute actions pursuant to the provisions of Article

VI.  Id.

    Finally, "the New York Labor Law reflects 'a strong

legislative policy aimed at redressing the power imbalance

between employer and employee.'"   Id. at 317, quoting

---

fifty dollars for expenses which may be taxed as costs. No assignee of
a wage claim, except the commissioner, shall be benefited by this
provision.

1-a. In any action instituted upon a wage claim by an employee or the
commissioner in which the employee prevails, the court shall allow such
employee reasonable attorney's fees and, upon a finding that the
employer's failure to pay the wage required by this article was
willful, an additional amount as liquidated damages equal to twenty-
five percent of the total amount of the wages found to be due.

2. The remedies provided by this article may be enforced simultaneously
or consecutively so far as not inconsistent with each other.

3. Notwithstanding any other provision of law, an action to recover
upon a liability imposed by this article must be commenced within six
years. All employees shall have the right to recover full wages,
benefits and wage supplements accrued during the six years previous to
the commencing of such action, whether such action is instituted by the
employee or by the commissioner.

[6] N.Y. Lab. Law § 198(1) (2007).

[7] Id. at § 198(1-a).

[8] Id. at § 198(3).

<u>Saunders v. Big Bros., Inc.</u>, 454 N.Y.S.2d 787, 787 (N.Y. Civ. Ct. 1982).   <u>See</u> <u>also</u> <u>P & L Group, Inc. v. Garfinkel</u>, 541 N.Y.S.2d 535, 537 (2d Dep't 1989) ("Labor Law §§ 197 and 198 reflect a strong legislative policy aimed at protecting an employee's right to wages earned."). Implying a right of action under Article VI is therefore consistent with the policies underlying the Labor Law.

Section 190 of the Labor Law defines an "employer" as "any person, corporation or association employing any individual in any occupation, industry, trade, business, or service."   The <u>Chung</u> court describes the Appellate Division's decision in <u>Wong v. Yee</u>, 693 N.Y.S.2d 536 (1st Dep't 1999), as standing for the proposition that, even if defendants are shareholders of a company, they can be sued under the New York Labor Law so long as they are also employers within the definition of § 190.   <u>Chung</u>, 272 F.Supp.2d 314, 319.[9]   In order to show that a defendant is an employer, a plaintiff must prove that the defendant had the power to hire and fire employees, that he supervised and controlled the conditions of employment, and that he

---

[9] The court in <u>Wong v. Yee</u> held that a plaintiff could not proceed against shareholders of a company pursuant to BCL § 630, and also overturned the trial court's dismissal of plaintiff's cause of action under the New York Labor Law, since there was an issue of fact as to whether defendants, who were shareholders of the company, could be held liable for their violations as employers.   693 N.Y.S.2d 536 (1st Dep't 1999).

determined rates and methods of payment.  Herman v. RSR
Sec. Serv., Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he
overarching concern is whether the alleged employer
possessed the power to control the workers in question,
with an eye to the "economic realities" presented by the
facts of each case.") (citations omitted).[10]  The question
of whether an individual entity qualifies as an "employer"
is governed by the "economic reality" of the relationship.
Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir.
2003) (explaining that "'economic reality' rather than
'technical concepts' is … the test of employment" under the
Fair Labor Standards Act (quoting Goldberg v. Whitaker
House Coop., Inc., 366 U.S. 28, 33 (1961))).

Plaintiffs offer substantial evidence that Defendant
Peter Glazman exercises the type of operational and
economic control over U.S. Pack employees necessary to
qualify him as an employer under the Labor Law.  Glazman is
the sole shareholder, director and president of U.S. Pack.
(Defs.' Rule 56.1 Anal. ¶¶ 2-4.)  Glazman has ultimate
authority to sign "Subscription Agreements" with new
employees and to negotiate and set commission rates and

---

[10] Most courts agree that the test for determining whether an entity or
person is an "employer" under the New York Labor Law is the same as the
test set forth in Herman for analyzing employer status under the Fair
Labor Standards Act.  See Chung, 272 F.Supp.2d 314, 319; Lopez v.
Silverman, 14 F.Supp.2d 405, 411 n. 4 (S.D.N.Y. 1998).

rates of pay for drivers.   (Defs.' Rule 56.1 Anal. ¶ 74.)
Glazman is regarded as the "boss" and "owner" of U.S. Pack
by franchisees and the managerial staff, and both
supervises and sets the salaries of Milan Cuba, manager
Greg Kellman, and bookkeeper Dawn Rocks.   (Id. ¶ 73.)

        Glazman testified that though payments to the drivers
were typically handled by the company bookkeepers, Glazman
himself sometimes authorized higher payments based on
individual negotiations.   (Glazman 1 at 116.)   Glazman also
has authority to unilaterally make decisions regarding the
structure and organization of U.S. Pack under the tax and
franchise laws.   He testified that he split U.S. Pack's New
York and New Jersey customers between Network and Courier
Services for tax purposes, and he withdrew U.S. Pack's
franchise designation on the advice of his attorney.
(Glazman 1 at 46-47, 57-58, 63-64.)   Plaintiffs' testimony
indicates that Glazman was frequently present at their
initial employment meetings at U.S. Pack and that Glazman
routinely convened meetings to notify employees of new
developments in company policy, such as the issuance of new
pay rates.   (Maler at 15, 18-20, 79-80; Imas at 12, 20;
Ondusko at 22-24; McFarland at 17-20; Teleky at 23-25.)

        Defendant Glazman exercises ultimate control over the
business and personnel decisions at U.S. Pack and

substantial control over its routine operations; under the economic reality test of control discussed above, Glazman therefore qualifies as an "employer" for the purposes of liability under the Labor Law.  His status as a corporate officer of the U.S. Pack companies is not a bar to his liability under the Labor Law, under the logic of <u>Chung</u>, as he qualifies as an employer.  Plaintiffs have therefore demonstrated the existence of a genuine issue of material fact with regard to Peter Glazman's liability under the New York Labor Law.  Defendants' motion for summary judgment with respect to Plaintiffs' claims under the New York Labor Law is therefore GRANTED as to Plaintiff Maler and DENIED as to Plaintiffs Vysovsky, Petrilak, Kroshnyi, Teleky, Redaj, Bulikova, Bulik, Ondusko, McFarland, Szycowski, and Imas.

> **b. Glazman's Individual**
>
> **Liability under the Franchise**
>
> **Sales Act**

The Franchise Sales Act imposes joint and several liability on:

> A person who directly or indirectly controls a person liable under this article, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, and an employee of a person so liable, who materially aids in the act or transaction

constituting the violation […]

N.Y. Gen. Bus. Law § 691 (2007).  Section 691(3) effectively dissolves the corporate veil by making corporate officers and directors jointly and severally liable under the FSA if they "materially aid[ ] in the act [or] transaction constituting the violation."  <u>Retail Software Serv., Inc. v. Lashlee</u>, 854 F.2d 18, 21 (2d Cir. 1988).  New York courts have found that § 691 imposes liability on executive officers, directors and controlling persons of the franchisor only when their actions "materially aid" the statutory violation.  <u>A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.</u>, 87 N.Y.2d 574, 579 (1996) (finding that a defendant, the president of the corporation's board of directors, "materially aided" in the violation of the Franchise Sales Act where he developed the corporation's business plan, directly participated in the unlawful franchise sales, and was responsible for misrepresentations in the solicitation materials).

The facts cited above with respect to Peter Glazman's control over the company operations for purposes of establishing his liability under the Labor Law are equally relevant to the current analysis.  As discussed above, Glazman's control over the employees and business

52

operations of U.S. Pack, qualifying him as an "employer" under the Labor Law, is evidenced by multiple factors:  his exclusive decision-making authority with respect to U.S. Pack's business and tax strategy; his exclusive control over the employment contracts of the management staff; his ultimate control over franchisees' employment contracts (evidenced by his signing of Subscription Agreements); and his hands-on involvement in franchisee hiring decisions and payment negotiations.  The Franchise Sales Act violations alleged by Plaintiffs involve Defendants' failure to provide Plaintiffs with copies of the Offering Prospectus at the initial employment meetings, at which Peter Glazman was described as often being present, and conduct surrounding the withdrawal of the registered franchise, which Glazman asserts was pursuant to his decision, made on advice from his counsel.  Due to Glazman's ultimate authority over the conduct constituting the alleged violations of the Franchise Sales Act and his active participation in the meetings and decisions at issue, the Court finds that Glazman, like the defendant found liable in Union Carbide, "materially aided" in the alleged violations of the Franchise Sales Act.  A genuine issue of material fact therefore exists as to Peter Glazman's liability under the Franchise Sales Act.  Defendants'

motion for summary judgment as to Plaintiffs' claims under
the Franchise Sales Act against Peter Glazman is therefore
GRANTED as to Plaintiffs Bulik, Teleky and Bulikova and
DENIED as to Plaintiffs Vysovsky, Petrilak, Kroshnyi,
Redaj, Maler, Ondusko, McFarland, Szycowski, Imas and
Holesa.

### III.  CONCLUSION

     For the foregoing reasons, Defendants' motion to amend
their answer is GRANTED; their motion for summary judgment
is GRANTED in part and DENIED in part.  Defendants' motion
for summary judgment is GRANTED as to Plaintiffs' claims
under the Federal Insurance Contributions Act, their claims
for unpaid overtime wages under the New York Labor Law and
FLSA, their claims under tort and quasi-contract theories,
and their contract claims.  Defendants' motion for summary
judgment is also GRANTED as to Plaintiffs' claims under the
Franchise Sales Act with respect to Plaintiffs Bulik,
Teleky and Bulikova, and Plaintiffs' claims under the New
York Labor Law with respect to Plaintiff Radomir Maler.
Defendants' motion for summary judgment is DENIED as to
Plaintiffs' claims under the Franchise Sales Act for
Plaintiffs Vysovsky, Petrilak, Kroshnyi, Redaj, Maler,
Ondusko, McFarland, Szycowski, Imas and Holesa, and as to
Plaintiffs' claims under the New York Labor Law for all

Plaintiffs excluding Radomir Maler.

*          *          *

The parties are to submit a proposed joint pretrial order not later than December 31, 2007.

If the parties agree to do so, the Court will refer this case to the Court's ADR (mediation) program, which may assist in a consensual resolution.  (Should the parties opt for ADR, the Court will appropriately extend the time for submission of a proposed joint pretrial order.)

SO ORDERED.

Dated: October 23, 2007

Lawrence M. McKenna
U.S.D.J.

55